FOIL, Judge.
This is an appeal from a trial court judgment reversing two administrative orders issued by the Commissioner of Conservation of the Department of Natural Resources of the State of Louisiana (Commissioner), which concerned the method of partition and accounting for the gas production from units that were revised retroactively by two prior orders. The issue before us is whether the trial court erred in reversing the Commissioner’s orders which mandated a partition in kind, and instead ordering a cash accounting to correct the production imbalance. We affirm the judgment of the trial court.
FACTS
Office of Conservation Order Nos. 745-G-8 and 745-H-5 revised several units in the South Lake Arthur Field in Jefferson Davis and Vermilion Parishes. The hearings thereon concluded on October 18,1989, but due to the complexities involved, the orders were not issued until January 22, 1990. These orders resulted in a change in the ownership interests in the units and, as is customary, they were given retroactive effect to the date the hearings ended. During the “critical period” between October 18, 1989 (the effective date of the units’ revisions) and January 22, 1990 (the date Order Nos. 745-G-3 and 745-H-5 were issued), a substantial quantity of gas was produced from the units which was sold or credited to the account of the unit owners pursuant to the ownership percentages as they existed prior to the new revisions. This was necessarily so because, prior to January 22, it was not known what the new ownership interests would be. But, since the unit revisions were given retroactive effect back to October 18, 1989, some owners became “overproduced” because, during the 96-day critical period, they took and sold more gas than they were held to own under the new orders. Conversely, other owners became “underproduced” because they were retroactively awarded an increased interest in the units. Thus, a significant gas imbalance was created during the critical period.
PROCEDURAL HISTORY
Plaintiffs, Hunt Oil Company, NWM/H-1982, Ltd. and Energy Development Corporation, are three companies whose ownership interests were increased by the new orders, causing them to be underproduced. They applied to the Commissioner for relief from the imbalance, requesting that the overproduced owners account in cash for the gas produced during the critical period in excess of the share those owners were entitled to under the new unit revisions. After a hearing on the application, the Commissioner issued Order Nos. 745-G-4 and 745-H-6, finding that plaintiffs failed to meet the required burden of proof necessary to deviate from the preferred method of accounting in kind to remedy the gas imbalance. Plaintiffs requested a rehearing in connection with those orders, which the Commissioner denied.
Having exhausted their administrative remedies, plaintiffs then filed a petition for judicial review, seeking to have the trial court set aside the Commissioner’s orders and order a cash accounting. Three overproduced owners of interests in the revised units, Tex/Con Oil and Gas Company, Sande-fer Oil & Gas, Inc. and SHV Oil and Gas Company (hereafter referred to collectively as intervenors), filed a petition of intervention in the matter, urging the court to affirm the Commissioner’s orders requiring an accounting in kind.
*261 After considering the written and oral arguments of all parties, the trial court found the Commissioner’s orders were manifestly erroneous and reversed the same, ordering that the matter be remanded to the Commissioner for a cash balancing. The Commissioner filed a suspensive appeal and interve-nors filed a devolutive appeal from the judgment of the trial court.
DISCUSSION
On appeal, both the Commissioner and in-tervenors urge that the trial court erred in the following respects: in overturning the facts found by the Commissioner; in finding that plaintiffs lacked a “viable market” in which to sell their gas; and in failing to follow the preferred method of balancing in kind to remedy gas imbalances.
The law concerning gas balancing was set forth in two prior opinions of this court, Amoco Production Company v. Thompson, 516 So.2d 376 (La.App. 1st Cir.1987), writs denied, 520 So.2d 118 (La.1988) and Amoco Production Company v. Thompson, 566 So.2d 138 (La.App. 1st Cir.), writs denied, 571 So.2d 627, 628 (La.1990). For simplicity, we will refer to these opinions, respectively, as Amoco I and Amoco II. In Amoco I, we stated our view that partition in kind is only the preferred method of partition; the right of an owner to take his gas in kind is not absolute. The Commissioner has the authority to modify or deny the right to take in kind if it: 1) causes waste; 2) precludes another owner from recovering his just and equitable share; or 3) adversely affects the correlative rights of another owner by limiting his liberty to enjoy his rights or causes damage to him. Amoco I at 395. Since the Commissioner is obliged to issue orders affording each owner the right to recover his fair share, the Commissioner can order an accounting in kind or an accounting in cash “if such is the only available practical relief.” This affords the affected owner the ability to obtain his just share “without unnecessary expense,” as is required by the Conservation Law. The determination of whether to order an accounting in kind or in cash depends on the circumstances of each case. Amoco I, at 394.
In Amoco II, we were asked to review a trial court judgment reversing an order of the Commissioner which was issued pursuant to our remand in Amoco I. In discussing the standard of judicial review of the Commissioner’s order, we noted that the trial court has the power to reverse the decision if substantial rights were prejudiced because the Commissioner’s findings were:
1. in violation of constitutional or statutory provisions;
2. in excess of his statutory authority;
3. made upon unlawful procedure;
4. affected by other error of law;
5. arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
6. manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record.
Amoco II, at 144; La.R.S. 30:12. However, we also recognized the fundamental rule that the trial court must not weigh de novo the evidence presented and substitute its judgment for that of the Commissioner. The reviewing court must apply two tests: the manifest error test to the Commissioner’s factual findings and the arbitrariness test to his conclusions of law and exercises of discretion. Amoco II, at 145.
The trial court in Amoco II reversed an order issued by the Commissioner which called for an accounting in cash for the gas production from certain compulsory units for a specified time period. On appeal, this court reversed the judgment of the trial court and reinstated the Commissioner’s order. We concluded that the Commissioner was not clearly wrong in finding that the non-taking owners, who did not have a viable market for their gas during the time period in question, were adversely affected. We also found that the Commissioner did not act arbitrarily and capriciously in ordering a cash accounting to protect the correlative rights of the non-taking owners in that case.
The trial court in this case found that the Commissioner committed an error of law in failing to order a cash accounting as mandated by the two Amoco cases. The court *262 found that the evidence clearly established that plaintiffs lacked a viable market during the critical period and were therefore entitled to a cash balancing under Amoco II. Plaintiffs argue on appeal, and the trial court obviously agreed, that lack of a “viable market” means that they were unable to sell their share of the gas due to circumstances beyond their control, i.e. because they did not know that they owned it. We disagree. In fact, David Brooks, a landman employed by plaintiff, Hunt Oil Company, testified at the hearing that Hunt could have sold its share if it had had the opportunity. Hunt had a readily available market because it was operating six other wells in the field. In light of this testimony, we cannot say that plaintiffs lacked a viable market for their gas. We feel that this term applies to situations such as that present in the Amoco case, where the non-taking owners were small companies that “could not find anyone to buy their gas.” Amoco II, at 145.
The facts of this case are very distinct, and quite different from the facts in the Amoco cases. However, it is clear from a reading of those cases that the lack of a viable market for the gas is not the only circumstance that might warrant a cash accounting. As we noted in Amoco II, at 144, well depletion is another criterion for allowance of cash balancing. Indeed, we are certain that there are other circumstances which may warrant a cash accounting; each case must necessarily be decided based upon its own unique set of facts. Here, we are convinced that the result reached by the trial court was correct, albeit not for the same reasons.
A reviewing court may reverse a substantive decision of the Commissioner if it is shown that the balancing of costs and benefits performed by the Commissioner was achieved arbitrarily or with insufficient consideration of public and private interests. Amoco II, at 145. The record from the hearings held before the Commissioner is fraught with testimony that a cash accounting is warranted in this case primarily because it would take an inordinate amount of time for the overproduced owners to provide enough makeup gas to get the underpro-duced parties in balance. In addition, balancing in kind would be unfair and unjust in this case because plaintiffs would further lose the time value of money. That fact and the uncertainty as to gas prices would adversely affect plaintiffs’ rights to recover their just share without unnecessary expense. On the contrary, the overproduced owners marketed and sold gas which ultimately did not belong to them and “pocketed” the money from those sales. There was absolutely no evidence indicating that the interests of these overproduced owners would be adversely affected by a cash accounting in this case. Plaintiffs did not ask for interest on the money they are owed, and intervenors have reaped the time value of this money since late 1989. We find it clear that the Commissioner gave insufficient consideration to the private interests of all the parties involved in this case when he ordered a balancing in kind.
After reviewing the entire record, we find that plaintiffs carried their burden of proving facts justifying a cash accounting by a preponderance of the evidence. As such, the Commissioner was manifestly erroneous in failing to find as fact that balancing in kind would adversely affect the rights of plaintiffs to obtain their just and equitable share without unnecessary expense. Plaintiffs amply demonstrated that a cash accounting is the only practical remedy which would protect the correlative rights of the affected parties. Moreover, the Commissioner was clearly arbitrary and capricious in concluding that balancing in kind was appropriate under the unusual circumstances of this case.
Accordingly, we affirm the judgment of the trial court which reversed the Commissioner’s Order Nos. 745-G — 4 and 745-H-6, ordered a “cash balancing” in this case and remanded the matter to the Commissioner to set forth the method of calculating the amount due. Costs of this appeal in the amount of $213.66 are assessed to appellants, the intervenors and the Commissioner.
AFFIRMED.
PARRO, J., dissents.